J-S40044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: R.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.F., NATURAL MOTHER | No. 433 WDA 2015 |

Appeal from the Order entered February 12, 2015,
in the Court of Common Pleas of Erie County, Criminal
Division, at No(s): CP-25-DP-0000068-2014

| | |
|---|---|
| IN THE INTEREST OF: J.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.F., NATURAL MOTHER | No. 434 WDA 2015 |

Appeal from the Order entered February 12, 2015,
in the Court of Common Pleas of Erie County, Criminal
Division, at No(s): CP-25-DP-0000183-2014

BEFORE: FORD ELLIOTT, P.J.E., DONOHUE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STRASSBURGER, J.:             **FILED AUGUST 31, 2015**

S.F. (Mother) appeals from the order entered February 12, 2015, in the Court of Common Pleas of Erie County, which changed the permanency goal of her minor daughter, J.A., born in January of 2014, to adoption.[1] Mother also appeals from a separate order entered that same day, which

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] J.A.'s father, F.A. (Father), also has appealed from the subject order. The disposition of his appeal is by separate memorandum.

ended services and visitation with respect to her other minor daughter, R.R., born in December of 2004.[2]  After careful review, we affirm.

On October 11, 2012, Mother placed R.R. in the care of J.M., Mother's cousin.  On April 29, 2014, J.M. contacted the Erie County Office of Children and Youth (the Agency), and asked that R.R. be removed from her home. R.R. was adjudicated dependent by order entered May 20, 2014.  On September 10, 2014, the Agency placed R.R. back in the care of Mother.

Less than a week later, on September 16, 2014, Mother took J.A. to the hospital, where it was determined that J.A. had suffered a spiral fracture to her arm.  Mother provided several inconsistent explanations of how this injury took place, none of which was medically acceptable.  As a result of these events, *inter alia*, R.R. and J.A. were placed in foster care.

On December 18, 2014, the Agency filed a petition for permanency hearing, in which it recommended terminating the parental rights of Mother involuntarily.  A permanency hearing was held on February 6, 2015. Following the hearing, on February 12, 2015, the court entered its order changing J.A.'s permanency goal to adoption.  The court also entered its order ending Mother's services and visitation with respect to R.R.  Mother

---

[2] The order ended services and visitation as to Mother, but provided that services and visitation would be offered to R.R.'s father, J.G.-R., who recently was released from incarceration in Philadelphia.  J.G.-R. is not a party to the instant appeal.

J-S40044-15

timely filed notices of appeal, along with concise statements of errors complained of on appeal.

Mother now raises the following issues for our review.

1. Did the juvenile court commit an abuse of discretion and/or error of law when it determined that the concurrent placement goal of reunification/adoption was no longer feasible, dispensed with the concurrent placement goal of reunification after less than four months [as to J.A.] and after less than nine months [as to R.R.], and directed the Agency to provide no further services and/or visitation to [Mother]?

2. Did the juvenile court commit an abuse of discretion and/or error of law when it allowed and considered testimony over objection, relating to an alleged incident on December 31st, 2014?

3. Did the juvenile court [commit a]n abuse of discretion and/or error of law when it failed to inquire into the wishes of the child, R.R.?

Mother's Brief at 9 (trial court answers, suggested answers, and unnecessary capitalization omitted)

We consider these issues mindful of the following.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

**In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010).

Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances

- 3 -

which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

Mother's first issue is that the juvenile court committed an abuse of discretion and/or error of law by changing J.A.'s permanency goal to adoption, and by ending Mother's visitation and services with respect to R.R. Mother's Brief at 16. Mother argues that she has made "significant progress" since J.A. and R.R. were removed from her care, in that she has maintained stable housing, and has attended visits, doctor's appointments, urine screens, and parenting classes consistently. *Id.* at 17, 19-20. Mother also contends that there was no credible evidence of domestic violence in her home. *Id.* at 17-20.

In its opinion pursuant to Pa.R.A.P. 1925(a), the juvenile court explained that it changed J.A.'s permanency goal to adoption and ended Mother's services and visitation with respect to R.R. because Mother and Father have demonstrated that they will not, or cannot, remedy their domestic violence issues to the extent that they can safely parent R.R. and J.A. Juvenile Court Opinion, 3/31/2015, at 12, 17.

We conclude that Mother is not entitled to relief on her first issue. A review of the record reveals the following. During the February 6, 2015 permanency review hearing, Agency caseworker, Sharon Slubowski, testified that Mother and Father have a history of domestic violence. N.T., 2/6/2015, at 15. Ms. Slubowski noted that Father's previous girlfriend filed for Protection From Abuse (PFA) orders against him in 1996 and 2001. *Id.* at 17. Ms. Slubowski also discussed a more recent incident which took place in December of 2013, while Mother was pregnant with J.A. *Id.* at 16. During that incident, Father "got on top" of Mother and punched her in the face. *Id.* As a result, Father was arrested and incarcerated for an unspecified period of time. *Id.* at 15. Additionally, Mother filed for a PFA order against Father in September of 2014. *Id.* at 16. Ms. Slubowski did not describe this incident in detail, but stated that it involved "[m]uch the same thing…. If I can't have you nobody else will, that kind of thing." *Id.* at 16-17. Finally, Ms. Slubowski received allegations that Father had assaulted Mother on December 31, 2014, but Ms. Slubowski was not able to corroborate this information. *Id.* at 18. Despite these events, Ms. Slubowski believed that Mother and Father continue to reside together "most of the time." *Id.* at 14.

Ms. Slubowski further testified Mother and Father have been attending domestic violence intervention programs, but that they have done so inconsistently. *Id.* at 7, 21. At the time of the hearing, Mother was only one absence away from having to repeat her entire program. *Id.* at 21, 41.

Father no longer was permitted to attend his program, due to his prior bad behaviors. *Id.* at 7-9. Ms. Slubowski specified that Father used "foul language" during class, that he used his cellphone during class, and that "they smelled alcohol on his breath a couple times." *Id.* at 8. In order to return to the program, Father would need to meet with the director of the providing agency. *Id.* at 9.

Ms. Slubowski explained that Mother has attended 22 out of her 25 drug screens. *Id.* at 46. Mother has not tested positive for any substances, other than her prescription methadone. *Id.* Ms. Slubowski noted that Mother participates in parenting classes through Erie Family Center, but that Mother has been "a little inconsistent." *Id.* at 22. Ms. Slubowski later stated that Mother has been "rather consistent" in attending parenting classes. *Id.* at 52. Mother has attended all but two of J.A.'s doctor's appointments. *Id.* at 22-23, 51. Mother also attends her visits consistently, but she has displayed parenting problems during the visits. *Id.* at 22, 53.

With respect to mental health, Ms. Slubowski stated that Mother was ordered to "follow up with mental health at Stairways," but that Mother failed to attend all but one of her appointments, as of November 25, 2014. *Id.* at 19-20, 39. Mother also was ordered to attend counseling at Safenet starting in October of 2014. *Id.* at 21. Mother reported that she was going to start counseling on January 7, 2015. *Id.*

Accordingly, while Mother has attended visits, doctor's appointments, urine screens, and parenting classes, she has been slow to address her mental health needs. More critically, the record demonstrates that Father engages in violent and abusive behavior, and that Mother has maintained her relationship with Father, despite the safety risk that Father poses to R.R. and J.A. While Mother stresses that the report of domestic violence in December of 2014 was uncorroborated and unreliable, this argument ignores the fact that both Mother and Father have failed to attend their respective domestic violence intervention programs consistently. This failure demonstrates a continued lack of commitment toward remedying the couple's history of domestic violence, which has dragged on for years. Based on this evidence, it was reasonable for the court to conclude that J.A.'s permanency goal should be changed to adoption, and that Mother's services and visitation should be ended with respect to R.R. **Accord In re R.M.G.**, 997 A.2d 339, 354 (Pa. Super. 2010) (reversing denial of change of goal from reunification to adoption based upon, *inter alia*, "Mother's tolerance of domestic violence that persisted in Mother's relationship with Father for several years").

Mother's next issue is that the juvenile court abused its discretion and/or erred by allowing hearsay testimony relating to the alleged incident of domestic violence between Mother and Father in December of 2014, discussed above. Mother's Brief at 20.

- 7 -

…. [T]he decision to admit or exclude evidence lies within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, [t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

**Winschel v. Jain**, 925 A.2d 782, 794 (Pa. Super. 2007) (citations and quotation marks omitted).

Here, the juvenile court indicated that it gave "some, though not much, weight" to the alleged domestic violence incident. Juvenile Court Opinion, 3/31/2015, at 9, 16. The court concluded that there was other "substantial, overwhelming and credible evidence" of Mother and Father's history of domestic violence, as well as Mother's failure to address this issue, and that "[a]ny error in the admission of this evidence was therefore harmless …." **Id.** at 16.

We again conclude that Mother is not entitled to relief. At the start of the permanency hearing, the juvenile court indicated that it had reviewed the Agency's court summary. N.T., 2/6/2015, at 2. The court then stated that the summary would be admitted into evidence, and asked if there were any objections. **Id.** Mother's counsel did not object. **Id.** at 3. The Agency's court summary included a description of the alleged incident of domestic violence. Court Summary, 1/23/2015, at 11. Thus, at the time Mother's counsel objected to the statements of Ms. Slubowski, evidence of

- 8 -

the alleged incident already had been admitted into the record. Further, the record supports the juvenile court's determination that Mother and Father have a long history of abuse before December 2014, and that Mother has failed to address the issue through the services offered by the Agency. We therefore agree with the juvenile court that any error in admitting Ms. Slubowski's statements was harmless. *See*, *e.g.*, *Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1232 (Pa. Super. 2011) ("In short, the content of the inadmissible Reports was cumulative in nature to the admissible Reports and, consequently, the evidentiary error was harmless.").

Mother's final issue is that the juvenile court committed an abuse of its discretion and/or an error of law by ending her services and visitation with R.R. without first inquiring into R.R.'s wishes. Mother directs our attention to the following portions of the Juvenile Act.

**(e) Permanency hearings.--**

> (1) … In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. If the court does not consult personally with the child, the court shall ensure that the views of the child regarding the permanency plan have been ascertained to the fullest extent possible and communicated to the court by the guardian ad litem under section 6311 (relating to guardian ad litem for child in court proceedings) or, as appropriate to the circumstances of the case by the child's counsel, the court-appointed special advocate or other person as designated by the court.

42 Pa.C.S. § 6351(e).

**(b) Powers and duties.--**The guardian ad litem shall be charged with representation of the legal interests and the best interests of the child at every stage of the proceedings and shall do all of the following:

\* \* \*

(9) Advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court. A difference between the child's wishes under this paragraph and the recommendations under paragraph (7) shall not be considered a conflict of interest for the guardian ad litem.

42 Pa.C.S.A. § 6311(b)(9).

The juvenile court indicated that it was not required to consider R.R.'s wishes because, *inter alia*, Mother was not R.R.'s caretaker for over two years, and because Ms. Slubowski described the bond between Mother and R.R. as unhealthy. Juvenile Court Opinion, 3/31/2015, at 17.

Pursuant to the above statutes the juvenile court should have made a record of R.R.'s preference. However, we conclude that its failure to do so does not warrant reversal in this case because the juvenile court acted within its discretion in determining that reunification with Mother was contrary to R.R.'s best interests, regardless of any wishes R.R. wishes may have had to return to Mother.

The juvenile court was presented with the following description of visits between Mother and R.R.:

- 10 -

During the visits, it appears that [Mother] has difficulty dividing her attention between the two children. Often, [R.R.] will play alone while [Mother] interacts with [J.A.] On a few occasions, [Ms. Slubowski] has overheard [R.R.] state that she wanted to leave the visits well before they were scheduled to end. Other times, [R.R.] and [Mother] were observed to be watching the clock as if waiting for the visit to end. These visits were the two hour visitations that were held on Saturdays to make up for the [A]gency being closed over the holidays of Thanksgiving and Christmas. It appears that both mother and child continue to have difficulty with engagement after one hour. Separation after visitation has consistently been easy for the family.

Providers for [R.R.] have noted an increase in acting out behaviors both at home and at school following her interactions with her mother. [Mother] is observed to make many promises to [R.R.] that she is not able to fulfill. Examples would be the promise that she would return home, receive new boots and clothes, receive new jewelry, and receive an Ipod and a computer tablet. Her mother even promised to purchase [R.R.] a Halloween costume and when she did not follow through, [R.R.] had a verbal and physical incident at the foster home which resulted in her being grounded. [Mother] is not able to follow through with her promises and has not followed advice from providers that this is detrimental to [R.R.'s] emotional well[-]being.

Court Summary, 1/23/2015, at 16.

As observed by the juvenile court, the bond between Mother and R.R. is unhealthy. N.T., 2/6/2015, at 22, 53-54. Ms. Slubowski explained that, during visits, Mother "spends a whole lot of time bringing up all of the things that [R.R.] does bad instead of trying to build a relationship, build her self-esteem, that kind of thing. [R.R.] tries to end the visits early. Sometimes [Mother] tries to end visits early." *Id.* Furthermore, and most critically, Mother is unable to ensure R.R.'s safety, as we established in review of Mother's first issue above.

- 11 -

Thus, even if the court had interviewed R.R., and R.R. had stated that she wanted to be reunited with Mother, there was ample evidence presented during the hearing that reunification would not be in R.R.'s best interest. *See*, *e.g.*, *In re D.P.*, 972 A.2d 1221, 1232 (Pa. Super. 2009) (affirming change of goal from reunification to adoption, despite the wishes of the children to be with their mother, where returning the children to their mother would be to their detriment).

Accordingly, because we conclude that none of Mother's claims entitles her to relief, we affirm the orders of the juvenile court.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2015