J-S24016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: H.S., MOTHER | : | No. 308 WDA 2021 |

Appeal from the Order Entered February 4, 2021
In the Court of Common Pleas of Erie County
Juvenile Division at No(s): CP-25-DP-0000228-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: P.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: H.S., MOTHER | : | No. 309 WDA 2021 |

Appeal from the Order Entered February 4, 2021
In the Court of Common Pleas of Erie County
Juvenile Division at No(s): CP-25-DP-0000144-2020

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:          **FILED: SEPTEMBER 16, 2021**

Appellant, H.S. ("Mother"), appeals from the orders entered in the Erie County Court of Common Pleas, which changed the permanency goals for M.R. and P.R. ("Children") from reunification to adoption, following the motion of the Erie County Office of Children and Youth ("OCY") to change the permanency goal. We affirm.

The trial court opinion set forth the relevant facts and procedural history of this appeal as follows:

> M.R. came into the care of [OCY] by emergency protective

_____

[*] Former Justice specially assigned to the Superior Court.

order dated December 10, 2019, based on allegations related to parental substance abuse. A shelter care hearing was held on December 12, 2019. Mother did not appear at the hearing; Father appeared and stipulated to continuation of shelter care pending the adjudication hearing.

A dependency petition was filed December 13, 2019….

\* \* \*

An adjudication and disposition hearing was held before the juvenile court hearing officer on December 19, 2019. Both parents were present, though Mother arrived late. Father was represented by counsel. The hearing officer found in favor of adjudication. The hearing officer's recommendation was adopted by court order dated January 8, 2020. By virtue of that order, Mother's dispositional permanency plan required her to:

1. Refrain from the use of drugs and alcohol and participate in random urinalysis testing at the Esper Treatment Center as requested by the agency. If a positive urine screen is received, [Mother] will be referred to the random urinalysis color code program through Esper Treatment Center;

2. Participate in a drug and alcohol assessment and follow through with any recommendations;

3. Participate in a mental health evaluation and follow through with any recommendations;

4. Obtain and/or maintain safe and stable housing and provide the agency with a signed lease to show that she is able to provide stability for [M.R.];

5. Obtain and/or maintain gainful employment and provide the Agency with documentation that she is employed and receives an income;

6. Participate in a parenting education program and demonstrate the ability to provide for [M.R.'s] needs during visitation;

- 2 -

7.     Demonstrate the ability to provide for the safety and well-being of the child to include attending medical, dental, and other needed appointments; and

8.     Sign any and all releases requested by the Agency.

Mother's treatment plan was revised a few weeks later to require participation in family dependency drug treatment court.

For the first two review periods (January—May 2020), Mother demonstrated moderate compliance with her permanency plan, except she continued to test positive for marijuana, and on one occasion in January 2020, tested positive for amphetamine/methamphetamine. She underwent the requisite drug and alcohol and mental health assessments and was admitted to family dependency drug court. Her permanency plans were updated accordingly.

Drug testing was unavailable during the second review period due to [the] Covid-19-related shutdown of the Esper Medical Center testing facility. When Mother was tested on two occasions in May and June of 2020, she tested positive for marijuana.

Urinalysis drug testing resumed during the third review period (July—October 2020), but Mother failed to attend screenings after mid-September 2020. When she last appeared for testing, she tested positive for amphetamines, methamphetamines, and marijuana on September 8, 2020, positive-failure to produce on September 9, 2020, and negative on September 10, 2020. She has not submitted to testing since September 10, 2020. Visitation with M.R. was contingent on clean urines, therefore, Mother had no visits with M.R. during the third and fourth review periods.

Mother was discharged from family dependency treatment court by order … dated October 1, 2020, for "consistent failure to attend court, failure to submit to drug testing and non-compliance with treatment recommendations." Criminal docket searches during the third and fourth review periods revealed that Mother was charged with possession of drug paraphernalia in August of 2020 and pled guilty to

the charge in December of 2020.

Mother gave birth to P.R. on October 18, 2020. The child was taken into protective custody from the hospital based on Mother's ongoing substance abuse and the child's purportedly having tested positive for amphetamines and opiates at birth.

After the third permanency review hearing on November 2, 2020, the court found there had been no compliance with the permanency plan, and no progress toward alleviating the circumstances that led to [the] original placement, and granted OCY's motion to change the permanency goal for M.R. from reunification to reunification concurrent with adoption. An adjudication and dispositional hearing for P.R. was also held on November 2, 2020. P.R. was placed in the same kinship home as M.R. and assigned the same concurrent permanency goals.

OCY moved to change the permanency goal to adoption after the fourth permanency review period, in January of 2021, alleging parents' noncompliance with their permanency plans. The motion was heard at the time of the fourth permanency review hearing on February 1, 2021. Both parents appeared at the hearing by telephone and were represented by counsel.

(Trial Court Opinion, filed April 1, 2021, at 1-5) (internal footnotes and record citations omitted).

In separate orders entered February 4, 2021, the court changed Children's permanency goals to adoption. Mother timely filed separate notices of appeal and concise statements of errors on March 4, 2021. On April 30, 2021, this Court consolidated the appeals *sua sponte*.[1]

Mother now raises one issue for our review:

---

[1] Father is not a party on appeal.

> Whether the juvenile court committed an abuse of discretion and/or error of law when it determined that the concurrent permanency goal of reunification was no longer feasible and changed the goal to adoption?

(Mother's Brief at 3).

On appeal, Mother argues that she "was participating in services and working towards alleviating the circumstances that led to the placement of the minor children." (*Id.* at 11). Mother argues that she actually succeeded in finding help outside of the court-ordered services required by her permanency plan. Mother insists, however, that she did not have enough time to work through the plan and achieve reunification with Children due to the COVID-19 pandemic. Mother concludes that "the record failed to support a conclusion that it was in the best interest of the minor children to change the goal to adoption." (*Id.* at 9). We disagree.

On appeal, goal change decisions are subject to an abuse of discretion standard of review. *In re N.C.*, 909 A.2d 818, 822 (Pa.Super. 2006).

> In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witness and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, "even if the record could also support an opposite result."

*Id.* at 822–23 (internal citations omitted).

The Juvenile Act controls the disposition of dependent children. *In re R.P.*, 957 A.2d 1205, 1217 (Pa.Super. 2008). Section 6351 provides in relevant part:

**§ 6351. Disposition of dependent child**

\* \* \*

**(f) Matters to be determined at permanency hearing.**—At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

\* \* \*

(10) If a sibling of a child has been removed from his home and is in a different placement setting than the child, whether reasonable efforts have been made to

place the child and the sibling of the child together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

(11) If the child has a sibling, whether visitation of the child with that sibling is occurring no less than twice a month, unless a finding is made that visitation is contrary to the safety or well-being of the child or sibling.

\* \* \*

**(f.1) Additional determination.**—Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

\* \* \*

**(f.2) Evidence**.—Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g) Court order**.—On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f), (f.1), (f.2), (g).

"When the child welfare agency has made reasonable efforts to return a [dependent] child to his or her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home." *In re N.C., supra* at 823.

Although the agency has the burden to show a goal change would serve the child's best interests, "[s]afety, permanency, and well-being of the child must take precedence over **all** other considerations" under Section 6351. *In re D.P.*, 972 A.2d 1221, 1227 (Pa.Super. 2009), *appeal denied*, 601 Pa. 702, 973 A.2d 1007 (2009) (emphasis in original); *In re S.B.*, … 943 A.2d 973, 978 [(Pa.Super. 2008)], *appeal denied*, 598 Pa. 782, 959 A.2d 320 (2008). "[T]he parent's rights are secondary" in a goal change proceeding. *In re D.P., supra*.

Because the focus is on the child's best interests, a goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan. *In re N.C., supra* at 826-27. Where a parent's "skills, including her judgment with regard to the emotional well-being of her children, remain problematic[,]" a goal change

to adoption might be appropriate, regardless of the parent's compliance with a permanency plan. *Id.* at 825. The agency is not required to offer services indefinitely, where a parent is unable to properly apply the instruction provided. *In re A.L.D.*, 797 A.2d 326, 340 (Pa.Super. 2002). *See also In re S.B., supra* at 981 (giving priority to child's safety and stability, despite parent's substantial compliance with permanency plan); *In re A.P.*, 728 A.2d 375, 379 (Pa.Super. 1999), *appeal denied*, 560 Pa. 693, 743 A.2d 912 (1999) (holding where, despite willingness, parent cannot meet "irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent"). Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006).

*In re R.M.G.*, 997 A.2d 339, 347 (Pa.Super. 2010).

Instantly, the trial court determined that a goal change to adoption is appropriate:

> M.R. was twelve and a half months old when taken into protective custody. By the time of the goal change hearing thirteen and a half months later, [he] was twenty-six months old. P.R. was taken into custody shortly after birth and was three and a half months old at the time of the goal change. Parental substance abuse remained the primary circumstance necessitating placement for the entirety of the dependency proceedings.
>
> Regardless of Mother's modest efforts to comply with the permanency plan during the first two review periods, she never demonstrated sustained abstinence from illicit substances, including amphetamine, methamphetamine and marijuana. She continued to test positive for one or more substances through mid-September, 2020. She pled guilty to possession of drug paraphernalia arising from an incident on August 20, 2020.

> *        *        *

- 9 -

P.R. was born drug exposed in October, 2020. Thereafter, Mother never appeared for another court-ordered drug test, asserting without corroborating evidence or legal authority that she was precluded from traveling to Erie for drug testing due to Covid-19-related travel restrictions.

Secondary to ongoing substance abuse, Mother was never able to achieve stable housing or employment. She was living in Ohio when the Children were removed from Father's care in Girard, Pennsylvania, in December of 2019. Thereafter she resided with Father at one or more locations in west Erie County, before returning to Ohio with Father sometime in September of 2020. She elected to remain in Ohio ever since, despite her contention, albeit unsubstantiated, that living in Ohio prevented her from meeting the requirements necessary to see her Children.

Throughout this time, the Children have remained in kinship placement with their paternal uncle and his wife, who have met all of their needs and are identified as a permanent placement resource. Due to M.R.'s young age at the time of placement, and P.R.'s having never known Mother, and due to the lack of visitation between Mother and Children over the course of placement, it is reasonable to conclude that no meaningful parent-child bond exists between Children and Mother (or Father), and that it is in the Children's best interests to proceed with adoption. In short, there is simply no reason to continue to put the Children's lives on hold, given the parents have made no progress toward alleviating the circumstances that led to original placement over the past thirteen and a half months….

(Trial Court Opinion at 7-9) (internal footnote and record citations omitted).

The record supports the court's findings. The OCY caseworker testified that "[t]here has pretty much been zero compliance" by Mother with her treatment plan. (N.T. Permanency Hearing, 2/1/21, at 4). Regarding employment, Mother confirmed that she was not working while "waiting for a determination for disability." (*Id.* at 16). Regarding housing, Mother

indicated that she had moved out of a hotel and into the house of a friend in Ohio. (*See id.*) Mother stated this living arrangement was temporary "until we get our own place." (*Id.* at 17).

Mother also testified about her failure to attend drug screenings, blaming her noncompliance on the caseworker:

> I have called [the caseworker] and told her multiple times if she would work with Ashtabula County[, Ohio] for the drug screens because [the Ohio health department] said there is no way that we were allowed, not even with a court order, to go across state lines, and I told her that.

(*Id.* at 14). Nevertheless, the court did not find this explanation credible, and Mother did not offer any additional evidence to corroborate her self-serving statements. (*See* Trial Court Opinion at 6). On this record, the court correctly chose not to subordinate Children's need for permanence and stability to Mother's requests for additional time to comply with her plan. *See In re R.M.G., supra*; *In re N.C., supra*. Accordingly, we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2021

- 11 -