J-S50001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.L. A/K/A J.S.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.L., MOTHER | No. 3558 EDA 2014 |

Appeal from the Order entered November 24, 2014
in the Court of Common Pleas of Philadelphia County
Family Court, at No(s): AP#0000514-2014
FN-002680-2012

BEFORE: PANELLA, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.    **FILED SEPTEMBER 29, 2015**

J.L. ("Mother") appeals from the order entered November 24, 2014, in the Court of Common Pleas of Philadelphia County, which involuntarily terminated her parental rights to her minor daughter, J.L., a/k/a, J.S.L. ("Child"), born in September 2006, and changed Child's permanency goal to adoption. We affirm.[1]

On September 30, 2012, the Philadelphia Department of Human Services ("DHS") received a General Protective Services ("GPS") report alleging that Child and Mother were residing in a home that lacked running water and electricity and that received gas from an illegal gas hook up. The GPS report also alleged that Child was not enrolled in school. Finally, it was reported that Mother was often under the influence of drugs, using her

---

[1] The trial court also involuntarily terminated the parental rights of C.W., Child's father ("Father") to Child. Father has not filed an appeal of that decision.

welfare check to purchase controlled substances such as Xanax and Percocet. The report noted that Mother and Child's Maternal Grandmother, T.L. ("Maternal Grandmother") shared custody of Child. The GPS report found a lack of supervision on the part of Mother.

On October 1, 2012, DHS visited Mother's home. The DHS social worker observed that the home lacked not only gas and water service, but was filthy and had a foul odor from pet waste. DHS also found that four additional adults were residing in the home with Mother and Child. DHS implemented a Safety Plan with Mother, which stated that Mother would enter a shelter with Child on October 2, 2012.

On October 2, 2012, DHS performed a property search and learned that the owner of the home where Mother and Child resided was deceased. Mother was denied entry to the shelter system until correspondence from License and Inspection stated that the home was unfit for living, and that Mother needed to obtain Child's medicine to appropriately care for Child. In addition, DHS learned that Maternal Grandmother and her husband did not clear a criminal background records check.

On October 3, 2012, DHS obtained an Order of Protective Custody ("OPC") for Child, and placed her in the care of a family friend, H.D. A shelter hearing was held on October 4, 2012. Mother appeared at the hearing, and the trial court ordered the temporary commitment of Child to DHS. At the time of the hearing, the whereabouts of Father were unknown.

On October 11, 2012, the trial court adjudicated Child dependent, and ordered her committed to DHS's care and custody. Mother was ordered by the trial court to go to the Clinical Evaluation Unit ("CEU") for drug screens, dual diagnosis, and an assessment. The court also ordered Mother and Father to attend the Achieving Reunification Center ("ARC") program. The court further ordered Mother and Maternal Grandmother to attend bi-weekly supervised visits with Child.

On November 12, 2012, DHS referred Mother to the ARC program. On January 7, 2013, DHS held a Family Service Plan ("FSP") meeting. The FSP objectives set up for Mother were: (1) to provide Child with nutritious meals; (2) to receive a proper medical evaluation for Child; (3) to stay employed and seek job counseling and referrals; and (4) to visit and maintain regular contact with Child.

On January 22, 2013, CEU conducted a Chemical Dependency Evaluation for Mother, and a detoxification treatment program was recommended. Mother received drug abuse treatment at the facility. In April 2013, Child was reunited with Mother. On April 16, 2013, CEU completed a Chemical Dependency Evaluation of Mother, and recommended no treatment at the time.

A permanency hearing was held on June 19, 2013, and the trial court confirmed custody of Child with Mother. DHS offered aftercare services in the home for one year.

On August 7, 2013, Mother was arrested and charged with forgery, theft, and other similar crimes. On September 12, 2013, DHS received allegations that Mother was no longer residing in the family home. The North East Treatment Center ("NET") had not had a successful visit with Mother and Child since August 2013. The report alleged that Mother was residing with her ex-paramour; that Mother had been fired from her job for stealing; and, that Child lacked proper hygiene and nutritious meals. In addition, Child had gained a significant amount of weight, and it was reported that Mother gave Child a "white pill" every night before she went to bed.

On September 18, 2013, DHS and NET social workers visited Mother's new residence. DHS observed that the home had a foul odor. The lights did not work and there was exposed wiring from the electrical outlets in the hallway. DHS also visited the James Sullivan Elementary School where Child was enrolled. Child told the social worker that she was afraid to return home. Child was told by Mother not to disclose any information to DHS. DHS learned that Child witnessed eleven physical altercations between Mother's current paramour and her ex-paramour in the home. Child also reported that Mother forced her to take Tylenol PM before bedtime and physically abused her with a key.

DHS obtained an Order of Protective Custody ("OPC") for Child who was again placed with H.D. DHS had once again received allegations of

Mother's drug use and DHS was aware that Mother had a history of being transient, and lacked stable housing. The whereabouts of Father were still unknown to DHS.

An adjudication hearing was held on October 1, 2013. Following the hearing, the trial court adjudicated Child dependent, and ordered Child committed to DHS for a second time. Mother was referred to CEU for a drug screen, dual diagnosis assessment, and monitoring. Mother was required to submit to three drug screens. Mother was also referred to ARC programs for parenting education classes, housing programs, and anger management.

On October 21, 2013, DHS held an FSP meeting. The objectives for Mother were: (1) to comply with ARC for parenting, housing, and anger management; (2) to maintain suitable housing; (3) to seek employment, job counseling, and maintain financial stability; (4) to participate in CEU for drug screens and dual diagnosis assessment and monitoring; (5) to complete a Parenting Capacity Evaluation; and (6) to comply with supervised visits. On December 17, 2013, DHS referred Mother for a Parenting Capacity Evaluation at Assessment and Treatment Alternatives ("ATA"), which was cancelled because Mother did not confirm it. On December 26, 2013, CEU completed a report of Non-Compliance regarding Mother. Mother did not comply with the drug abuse assessment; failed to submit to a drug screen on October 1, 2013; and failed to appear at the scheduled appointments at Girard Medical Center on several occasions.

The court held permanency hearings. At each hearing, the record reflected Mother's lack of compliance with court-ordered drug treatments and the lack of stable housing.

On February 10, 2014, DHS filed Petitions to Terminate Mother's Parental Rights and to Change the Permanency Goal to Adoption. An evidentiary hearing was held on November 24, 2014. At the conclusion of the hearing, the trial court granted DHS's Petition to Terminate Mother's Parental Rights and Petition to Change the Permanency Goal to Adoption. This timely appeal followed.

We review this appeal according to the following standard.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating

- 6 -

parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is on the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). This Court need only agree with any *one* subsection of 23 Pa.C.S.A. § 2511(a), in addition to Section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we conclude that the trial court properly terminated Mother's parental rights pursuant to Section 2511(a)(1) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing

- 7 -

> of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> . . .
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(1) and (b).

With respect to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). Further,

> [o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id*. (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

On appeal, Mother argues that DHS failed to prove by clear and convincing evidence that her parental rights should be terminated. Mother emphasizes that she substantially met her FSP goals and tried to perform her parental duties.

The trial court found clear and convincing evidence that Mother demonstrated a settled purpose of relinquishing her parental claim to Child and failed to perform her parental duties. Trial Court Opinion, 1/20/15, at 5. The testimony of Tracy O'Donnell, the social worker, stated that Mother did not often visit with Child. Moreover, Mother has had no contact with Child since November 2013.

The testimony of the social worker established that Mother failed to comply with the permanency goals for Child. Mother did not successfully complete her drug and alcohol treatment, and was discharged from the program for non-compliance. Mother also did not complete an anger management program. Moreover, Mother did not complete her mental health treatment program, and was discharged from the program for non-compliance. Finally, Mother failed to offer proof of employment or job training.

In addition, the trial court determined that Mother failed to maintain contact with Child necessary to maintain a parental relationship. The trial court also concluded that Mother demonstrated a settled purpose of relinquishing her parental claim to Child. Thus, the competent evidence

supports the trial court ruling that DHS met its burden under 23 Pa.C.S.A. § 2511(a)(1).

Having determined that the trial court properly terminated Mother's parental rights pursuant to Section 2511(a)(1), we now review the order pursuant to Section 2511(b). With respect to Section 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, Child has been in foster care for over twenty-four months. The testimony of the social worker established that there is no parental bond between Mother and Child. Child told her social worker, Tracy O'Donnell, that she has no interest in a relationship with Mother, and does not refer to Mother as "mom." N.T., Hearing, 11/24/14, 12-13. Testimony at the hearing revealed that Child has bonded with her foster parents, and desires to be adopted by them. Ms. O'Donnell testified that Child refers to her foster

parents as "mom" and "dad," and has a very strong relationship with them.

*Id*. There was sufficient and competent evidence to support the trial court's findings with regard to the lack of a bond between Mother and Child that will be harmed if severed. *See In re K.Z.S.*, 946 A.2d at 764. Thus, we discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to Section 2511(b).

We next consider whether the trial court abused its discretion by changing the Children's permanency goal to adoption. Our standard of review is as follows.

> In cases involving a court's order changing the placement goal . . . to adoption, our standard of review is abuse of discretion. To hold that the trial court abused its discretion, we must determine its judgment was manifestly unreasonable, that the court disregarded the law, or that its action was a result of partiality, prejudice, bias or ill will. While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Therefore, our scope of review is broad.

*In re S.B.*, 943 A.2d 973, 977 (Pa. Super. 2008) (citations omitted). *See also In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

This matter is controlled by the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.*, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"), 42 U.S.C. § 671 *et seq*. *See In re M.S.*, 980 A.2d 612, 615 (Pa. Super. 2009). We have recognized that "[b]oth statutes are compatible pieces of legislation seeking to benefit the best interest of the

child, not the parent. . . . ASFA promotes the reunification of foster care children with their natural parents when feasible. . . . Pennsylvania's Juvenile Act focuses upon reunification of the family, which means that the unity of the family shall be preserved 'whenever possible.'" *Id.* (citing 42 Pa.C.S. § 6301(b)(1)). As such, child welfare agencies are required to make reasonable efforts to return a foster child to his or her biological parent. *See In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006). When those efforts fail, the agency "must redirect its efforts toward placing the child in an adoptive home." *Id*. (citation omitted).

At permanency review hearings for dependent children removed from the parental home, a trial court must consider the following factors.

**(f) Matters to be determined at permanency hearing.—**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

. . . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child . . . .

42 Pa.C.S. § 6351(f)(1)-(6), (9).  "These statutory mandates clearly place the trial court's focus on the best interests of the child."  *In re S.B.*, 943 A.2d at 978 (citation omitted).  We have stated, "[s]afety, permanency, and well-being of the child must take precedence over **all** other considerations." *Id*. (citation omitted) (emphasis in original).  Moreover, the burden is on the child welfare agency "to prove the change in goal would be in the child's best interest."  *In re D.P.*, 972 A.2d 1221, 1227 (Pa. Super. 2009).

In this case, during Mother's hearing, Ms. O'Donnell, the case manager, opined that it would be in the best interest of Child to change her permanency goal from reunification to adoption.  *See* N.T., Hearing, 11/24/14, at 13-14.  Given Mother's repeated failure to make progress in achieving her family service plan objectives, and considering that Mother

appears unlikely to ever complete these objectives, we conclude that the trial court did not abuse its discretion by changing Child's goals.

Accordingly, we affirm the order involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b), and changing Child's permanency goal to adoption.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2015