J-S75028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.P.Z. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: E.K., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1043 WDA 2017 |

Appeal from the Order June 16, 2017
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s):  20034 of 2016, O.C.-A.,
3 of 2013 DP

| | | |
|---|---|---|
| IN THE INTEREST OF: S.A.Z. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: E.K., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1044 WDA 2017 |

Appeal from the Order June 16, 2017
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s):  No. 20033 of 2016 O.C.-A.,
No. 4 of 2013 DP Juv. Div.

| | | |
|---|---|---|
| IN THE INTEREST OF: K.R.Z. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: E.K., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1045 WDA 2017 |

Appeal from the Order Entered June 16, 2017
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s):  5 of 2013 DP/ No. 20036 of 201

IN THE INTEREST OF: K.E.Z.          :    IN THE SUPERIOR COURT OF
                                     :          PENNSYLVANIA
                                     :
APPEAL OF: E.K., NATURAL MOTHER      :
                                     :
                                     :
                                     :
                                     :
                                     :
                                     :    No. 1046 WDA 2017

Appeal from the Order June 16, 2017
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s):  20035 of 2016 O.C.-A,
6 OF 2013 DP

BEFORE:  SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                          **FILED JANUARY 10, 2018**

E.K. ("Mother") appeals from the orders entered on June 16, 2017, changing the placement goals and involuntarily terminating her parental rights with respect to her son, S.P.Z., born in September of 2009, and her daughters, S.A.Z., born in April of 2008; K.R.Z., born in March of 2006; and K.E.Z., born in April of 2005 (collectively, "the Children").[1]  Upon careful review, we affirm.[2]

---

[1] The subject orders also involuntarily terminated the parental rights of the Children's father, J.Z. ("Father").  Father did not file notices of appeal.

[2] During the subject proceedings, the Children were represented by the Guardian *ad litem*, Deborah Shaw, Esquire, and by legal counsel, Adrienne Langer, Esquire.  Ms. Schaw and Ms. Langer filed separate appellee briefs to this Court in support of the goal change and involuntary termination orders.

In its opinion that accompanied the subject orders, the orphans' court set forth the factual and procedural history of this case, which the testimonial and documentary evidence supports. As such, we adopt it herein. *See* Trial Court Opinion, 6/16/17, at 1-12.

On December 22, 2016, Lawrence County Children and Youth Services ("CYS") filed petitions to change the Children's placement goal from reunification to adoption. CYS simultaneously filed petitions for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8) and (b).

On April 25, 2017, the first day of the hearing, CYS presented the testimony of its caseworker, Kayla Gould. Mother testified on her own behalf. On May 5, 2017, the second day of the hearing, Ms. Langer, the Children's legal counsel, presented the testimony of the three female children, who, along with their brother, S.P.Z., reside in separate foster homes.[3] K.E.Z., then age twelve, testified that she does not want to see Mother or speak to her. N.T., 5/5/17, at 9-10. She testified that she "really didn't like" receiving letters from Mother. *Id.* at 18. She testified that she is happy and feels safe in her current foster home. *Id.* at 8. When asked on direct examination whether she would prefer to be adopted or to live with

_____

[3] S.P.Z. was seven years old at the time of the hearing. In her appellee brief, Ms. Langer stated that S.P.Z. did not testify because of his "age and emotional maturity." Children's brief at 8, n. 1.

her siblings, K.E.Z. testified, "Probably . . . adopted, so I do not start fights with my siblings." *Id.* at 19. She acknowledged that it is difficult to be around her siblings all the time.[4] *Id.* K.R.Z., then age eleven, testified, "I do not want to live with my mom. I just want to be adopted." *Id.* at 25. S.A.Z., then age nine, testified that she would not feel safe if she returned to Mother's custody. *Id.* at 31. She testified that she "would feel fine" if she never again received cards, letters, or gifts from Mother. *Id.* at 32. S.A.Z. testified that she wishes to be adopted. *Id.*

By separate orders dated June 15, 2017, and entered on June 16, 2017, the orphans' court granted CYS's request to change the Children's placement goals[5] and to involuntarily terminate Mother's parental rights. Mother timely filed notices of appeal and concise statements of errors complained of on appeal, which this Court consolidated *sua sponte*.

On appeal, Mother presents the following issues for our review:

> 1. Whether the [orphans'] court erred or committed an abuse of discretion when it found that [CYS] had proven by clear and convincing evidence that grounds for termination existed?

_____

[4] Ms. Gould testified that the Children initially were placed with their paternal grandparents. She testified that they were placed in therapy and then in separate foster homes because they were acting out with each other, both physically and sexually. N.T., 4/25/17, Vol. I, at 70-71.

[5] By orders entered on June 22, 2017, the court amended the goal change orders with respect to K.E.Z. and K.R.Z. for the sole purpose of correcting the docket numbers.

2. Whether the [orphans'] court erred when it found that the termination of parental rights was in the best interest of the minor children?

3. Whether the [orphans'] court erred or committed an abuse of discretion when it granted [CYS's] motion for a goal change?

4. Whether the [orphans'] court erred when it found that a goal change was in the best interests of the minor children?

Mother's brief at 6.

We first consider Mother's issues relating to the goal change orders, which we review for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). Section 6351(f) of the Juvenile Act, 42 Pa.C.S. § 6301-6375, provides as follows, in relevant part.

**(f) Matters to be determined at permanency hearing.—**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

- 5 -

. . .

> (9) If the child has been in placement for at least 15 of the last 22 months . . . whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child.
> . . .

42 Pa.C.S. § 6351(f)(1)-(6), (9). "These statutory mandates clearly place the trial court's focus on the best interests of the child." *In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) (citation omitted). "Safety, permanency, and well-being of the child must take precedence over **all** other considerations." *Id.* (citation omitted) (emphasis in original). Moreover, the burden is on the child welfare agency "to prove the change in goal would be in the child's best interest." *In re D.P.*, 972 A.2d 1221, 1227 (Pa. Super. 2009).

In her third and fourth issues on appeal, Mother asserts that the court abused its discretion in changing the Children's placement goals to adoption. However, Mother does not support her assertion by legal argument or citation to relevant legal authority. Therefore, Mother has waived these issues. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (stating that issues are waived if appellate brief fails to provide meaningful discussion with citation to relevant authority); *see also* Pa.R.A.P. 2119(b).

Even if Mother's third and fourth issues were not waived, we would conclude that they are without merit. Mother claims that the court abused its discretion in changing the Children's placement goals because the CYS

- 6 -

caseworker, Ms. Gould, testified that a bond existed between Mother and the Children. The court concluded that a bond no longer exists between Mother and the Children and explained as follows.

> [Ms.] Gould testified that during the earlier period of time in which [Mother] was visiting with the children, there was evidence that a bond existed between [Mother] and the children. However, at the time of the hearings, over a year had gone by since [Mother] had seen the children. Although [Mother] sent cards and letters to the children, as time passed, the two oldest children rejected [Mother's] correspondence. Most tellingly, K.E.Z., now 12 years old; K.R.Z., now 11 years old; and S.A.Z., now 9 years old, testified at the hearing that they did not want to return to the care of their mother, expressing their desire to remain with the foster parents. Although some bond with [Mother] might have existed at an earlier point during placement, at the time of the hearings, any bond had dissipated.

Trial Court Opinion, 6/16/17, at 19 (citations to record omitted). The testimonial evidence supports the court's findings. With respect to Mother's son, S.P.Z., who did not testify, he was seven years old at the time of the hearing. The record reveals that he was three years old at the time of placement. Therefore, he had spent the majority of his life in foster care. There is no testimonial evidence of a bond between him and Mother. In addition, Ms. Gould testified that the Children continue to suffer from trauma arising from the physical abuse inflicted upon them by Mother. N.T., 4/25/17, Vol. I, at 69; Trial Court Opinion, 6/16/17, at 3-4. The Children receive ongoing counseling and therapy for their trauma. N.T., 4/25/17, at 69-73.

Further, Ms. Gould testified that Mother failed to satisfy her Family Service Plan ("FSP") goals requiring her to comply with the recommendations of the psychological and psychiatric evaluations; complete the Time Limited Family Reunification program; maintain consistent visits with the Children and demonstrate appropriate parenting skills; and maintain a safe and stable home environment for the Children. Trial Court Opinion, 6/16/17, at 9-12. As such, the testimonial evidence overwhelmingly supports the goal change orders as being in the Children's best interests.

In her first and second issues on appeal, Mother argues that the record evidence does not support the involuntary termination of her parental rights pursuant to 23 Pa.C.S. § 2511(a)(8) and (b). Specifically, Mother claims that the conditions that led to the Children's placement no longer exist. Mother acknowledges that the Children desire adoption. However, she speculates that the Children "had other influences over the last several years that may not have encouraged a healthy relationship between herself and her children." Mother's brief at 21. Mother baldly asserts that the orphans' court erred in terminating her parental rights pursuant to Section 2511(b) because it disregarded the "other influences" affecting her relationship with the Children.

We consider Mother's issues according to the following standard.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and

credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the relevant provisions of Section 2511 are as follows.

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

"Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of CYS supplied over a realistic time period. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of CYS services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa. Super. 2003); *In re Adoption of M.E.P.*,

825 A.2d 1266, 1275-76 (Pa. Super. 2003).  The "relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing."  **In re I.J.**, 972 A.2d 5, 11 (Pa. Super. 2009).

With respect to the "needs and welfare" analysis pertinent to Sections 2511(a)(8) and (b), we have observed:

> [I]nitially, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child.  However, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child."  Thus, the analysis under Section 2511(a)(8) accounts for the  needs of the child in addition to the behavior of the parent.  Moreover, only if a court determines that the parent's conduct warrants termination of his or her parental rights, pursuant to Section 2511(a), does a court "engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child."  Accordingly, while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

**In re Adoption of C.L.G.**, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (citations omitted).

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child."  **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted).  Further, the trial court

"must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Instantly, we discern no abuse of discretion by the court in terminating Mother's parental rights pursuant to Section 2511(a)(8). The court found that the Children have been in placement since January of 2013, far in excess of the statutory minimum. The court found that the conditions that led to the Children's removal and placement continue to exist. Trial Court Opinion, 6/16/17, at 15-17. Importantly, the court found that the Children "could not now safely be reunited with" Mother. *Id.* at 17. In addition, the court found that terminating Mother's parental rights would best serve the needs and welfare of the Children. Specifically, the court stated:

> The three oldest children testified that they do not to desire a return to their mother, and prefer to remain with foster parents. All of the children are progressing in foster care. The three oldest children appeared to be progressing more rapidly in foster care with counseling, while the youngest child, S.P.Z., although showing progress, still exhibits mental and behavioral issues that require more intensive therapy. The children are in need of permanence, a stable home life and the certainty afforded by the expectation of long[-]term residence with possible adoption.

*Id.* at 18. Upon thorough review, the termination of Mother's parental rights pursuant to Section 2511(a)(8) is supported by clear and convincing evidence. *See In re I.J.*, 972 A.2d 5, 11-12 (Pa. Super. 2009) (citations omitted) (stating, "a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities").

Likewise, the record supports the termination of Mother's parental rights pursuant to Section 2511(b). As discussed above, the testimonial evidence supports the court's finding that, although a bond may have existed between Mother and the Children at an earlier time after their adjudication, that bond "had dissipated" by the time of the hearing. The court stated:

> The children have been in foster care for over four years. Each of the children has experienced a severe trauma, and each has demonstrated serious behavioral issues that have required extensive therapy and counseling. That need for treatment and counseling has been, and continues to be, met by the foster homes. . . . Although the behaviors exhibited by the children have necessitated placement in separate foster homes, the children enjoy regular visits together.

*Id.* at 20. We discern no abuse of discretion. Accordingly, we affirm the orders terminating Mother's parental rights.

Orders affirmed.

Judgment Entered.

- 13 -

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/10/2018</u>