J-S08016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.'T.B.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.S.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2615 EDA 2018 |

Appeal from the Order Entered, August 9, 2018,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-DP-0001086-2017.

| | | |
|---|---|---|
| IN THE INTEREST OF: S.H. A/K/A C.'T.B.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.S.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2616 EDA 2018 |

Appeal from the Order Entered, August 9, 2018,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000179-2018.

| | | |
|---|---|---|
| IN THE INTEREST OF: C.'J.A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.S.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2618 EDA 2018 |

Appeal from the Order Entered, August 9, 2018,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s): CP-51-DP-0002398-2016.

| | | |
|---|---|---|
| IN THE INTEREST OF: C.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.S.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2619 EDA 2018 |

Appeal from the Order Entered, August 9, 2018,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s): CP-51-AP-0000180-2018.

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 01, 2019**

In these consolidated appeals, B.S.D. (Mother) appeals the orders terminating her parental rights to two-year-old daughter C.'J.A.H. and 15-month-old son C.'T.B.H., pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8) and (b).[1]  Mother also appeals the orders

_____

[1] The court also terminated parental rights of J.A.H. (Father).  Although he appealed, he is not a party to this matter.

changing their dependency goals from reunification to adoption pursuant to 42 Pa.C.S.A. § 6351.[2]  After careful review, we affirm.

The relevant factual background is this:

The Philadelphia Department of Human Services (DHS) became involved with the family in August 2016 when the older sibling, C.'J.A.H., was three months old.  It was reported to DHA that Mother left C.'J.A.H. with inappropriate caregivers and then avoided DHS' efforts to ensure the child's safety.  Over the course of its investigation, DHS learned that Father had repeatedly taken C.'J.A.H. to the police station because parenthood purportedly overwhelmed him.  Later, DHS received a second report after Mother left C.'J.A.H. in the street while she had an argument with Father in a nearby home.  The police took the baby to ensure her safety; they recognized her from the times Father left her at the police station.  The child was taken into protective custody and eventually adjudicated dependent on December 13, 2016.

In February 2016, a single case plan was formed to aid with reunification.  Mother's objectives were: to have supervised visits at DHS; receive three random drug screens prior to the next court date; attend

_____

[2] We observe that Mother properly appealed from both sets of dockets for each child, thereby properly preserving appellate review of all of her issues. **See Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (holding that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed; the failure to do so will result in quashal of the appeal.)

parenting classes; go to the Achieving Reunification Center (ARC) for housing resources and employment referrals; and receive a mental health and drug assessment.

In April 2017, Mother gave birth to C.'T.B.H. The child was born premature and tested positive for marijuana. Although the child weighed less than five pounds, he had a high score on the APGAR Test.[3] Hospital staff had to ask Father to leave, because he and Mother were arguing. When the hospital discharged C.'T.B.H., DHS placed him outside of Mother's care. In May 2017, the court adjudicated C.'T.B.H. dependent. Mother's single case plan objectives regarding reunification with C.'T.B.H. were the same as C.'T.A.H.'s case.

Between May 2017 and March 2018, Mother made minimal progress. DHS filed a petition to terminate parental rights and to change the goals from reunification to adoption. On August 9, 2018, the court held an evidentiary hearing. The children were properly represented pursuant to 23 Pa.C.S.A. § 2313(a). The court terminated Mother's rights and changed the children's goals from reunification to adoption. Mother filed this timely appeal.

She presents two questions for our review:

> 1. Whether the trial court abused its discretion and erred as a matter of law in terminating Mother's rights when petitioner failed to meet its burden that termination of parental rights was warranted under 23 Pa.C.S.A. §

---

[3] APGAR stands for Appearance, Pulse, Gestation, Activity, and Respiration.

2313(a) and (b) and the court's decision was not supported by competent evidence.

2. Whether the trial court abused its discretion and erred as a matter of law in changing the permanency goal from reunification to adoption without consideration of the best interests of the children and in contradiction to their developmental, physical and emotional needs and welfare.

*See* Mother's Brief at 8.

In her first issue, Mother challenges the termination of her parental rights to both children under § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As [the Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the

> parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003) ).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Sections 2511(a)(2) and (b) provide, in relevant part, as follows:

> § 2511. **Grounds for involuntary termination**
>
> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

The Supreme Court has addressed incapacity sufficient for termination under § 2511(a)(2):

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of J.J.*, 515 A.2d 883, 891 (Pa. 1986) (quoting *In re William L.*, 383 A.2d 1228, 1239 (Pa. 1978).

*In re Adoption of S.P.*, 47 A.3d at 827.

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

Turning to the instant matter, we first address the court's determination that DHS met its burdens under § 2511(a)(2), namely that Mother was incapable of parenting the children. The court determined that Mother's failure to complete drug treatment or to even take a mental health assessment evidenced her repeated and continued inability to parent the children. *See* Trial Court Opinion, filed October 4, 2018, at 8-9. We conclude that the trial court did not abuse its discretion. Although it could have arrived at a different conclusion, the evidence presented at the hearing was sufficient to support termination.

Mother argues "parental capacity was never discussed in any way, and there is no competent evidence to support termination[.]" *See* Mother's Brief at 19. We disagree with her characterization.

The DHS caseworker testified – and the court found – that Mother's single case plan compliance had been minimal throughout the children's dependency cases. *See* N.T., 8/9/18, at 22. Specifically, Mother never addressed her drug use or her mental health issues.

Mother testified that she attended drug treatment, but she explained that she had to stop because it interfered with her job. *Id.*, at 53.[4] This is a dubious justification, because Mother did not resume treatment once she became unemployed. In reality, Mother felt her drug use should not have been an issue at all. *Id.* at 64. She explained that her drug use only became a problem for the court once she gave birth to her second child. *Id.* Mother explained that she also tested positive for marijuana when she gave birth to her first child, but her use did not lead to her removal. *Id.* at 66. Although Mother's drug use was a topic during every permanency review hearing, Mother refused to participate in court-ordered treatment or to otherwise alleviate the court's concerns about her sobriety. As a consequence, the court could not trust Mother with anything other than supervised visitation. Mother's marijuana use may have been a form of self-medication. To that end, Mother refused to even submit to a mental health evaluation, let alone attend potential treatment. *Id.* at 17.

Throughout this case, Mother has demonstrated an incapacity, if not an outright refusal, to parent. Her inability to participate in court-ordered treatment has caused her children to be without parental care. Mother's incapacity has been repeated and continuous. The court's determination that she cannot remedy her inability to parent was reasonable. The court did not

_____

[4] The transcript contains a minor clerical error. During Mother's testimony, certain answers have been attributed to Caseworker Wilkerson. It is clear from the context, however, that Mother was the speaker. *See* N.T., at 52-53.

abuse its discretion as to the first prong of the termination analysis. ***See*** 23 Pa.C.S.A. § 2511(a)(2).

We now turn to the second prong under section 2511(b).  This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). ***See In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well.  Additionally, section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances…where direct observation of the interaction between the parent and the child is not

- 10 -

necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are also a relevant part of this analysis. *See In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of ... her child is converted, upon the failure to fulfill ... her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Instantly, the trial court concluded that Mother's noncompliance with her single case plan prevented her from having meaningful visitation with the children, which in turn, prevented the creation of a meaningful parental bond. *See* Trial Court Opinion at 14-15. The court found that the children look to their foster parent for support and stability. *Id.* at 15. As such, the trial court concluded that termination would best serve the children's needs and welfare. *Id.*

Mother claims that DHS did not meet its burden, because no bond assessment was ever conducted and that no one refutes the existence of a bond between Mother and the children. *See* Mother's Brief at 23. Mother contends, then, that the court abused its discretion when it concluded that

- 11 -

termination would best serve the children's needs and welfare. Again, we disagree with Mother's characterization of the record.

First, no formal bonding evaluation is required. *See In re Z.P.*, *supra*, 994 A.2d at 1121. Additionally, the caseworker evaluated the children's bond with Mother and testified that Mother was affectionate and appropriate during her regular bi-weekly visits. *See* N.T., at 42. Still, the caseworker concluded that severance of the parental bond would not cause the children irreparable harm. *Id.* at 43. The caseworker explained that enjoyable visitation with an adult does not equate to a meaningful parent-child relationship. The case worker testified that the children look to the foster parent as the source of support and stability. *Id.*

At the time of the termination hearing, the older child had been in placement for 20 of the 27 months of her life; the younger child had been in placement since birth. The trial court concluded that, to the extent that Mother's visitations even created parental bonds, such bonds would be far too attenuated to cause the children irreparable harm if they were severed. The record supports this conclusion.

In Mother's final issue, she contends that the court erred when it changed the children's goals from reunification to adoption. Regarding the goal change, our standard of review is as follows:

> In cases involving a court's order changing the placement goal...to adoption, our standard of review is abuse of discretion. To hold that the trial court abused its discretion, we must determine its judgment was manifestly unreasonable, that the court disregarded the law, or that its

action was a result of partiality, prejudice, bias or ill will. While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Therefore, our scope of review is broad.

*In re S.B.,* 943 A.2d 973, 977 (Pa. Super. 2008) (citations omitted), *appeal denied*, 959 A.2d 320 (Pa. 2008); *see also In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

This matter is controlled by the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"), 42 U.S.C. §§ 671–679. *In re M.S.,* 980 A.2d 612, 615 (Pa. Super. 2009), *appeal denied,* 985 A.2d 220 (Pa. 2009).

Both statutes are compatible pieces of legislation seeking to benefit the best interest of the child, not the parent.... ASFA promotes the reunification of foster care children with their natural parents when feasible.... Pennsylvania's Juvenile Act focuses upon reunification of the family, which means that the unity of the family shall be preserved 'whenever possible.'

*Id.* (citing 42 Pa.C.S.A. § 6301(b)(1)).

As such, child welfare agencies are required to make reasonable efforts to return a foster child to his or her biological parent. *In re N.C.,* 909 A.2d 818, 823 (Pa. Super. 2006). When those efforts fail, the agency "must redirect its efforts toward placing the child in an adoptive home." *Id.*

At permanency review hearings for dependent children who are removed from their parents' home, a trial court must consider the following factors:

**(f) Matters to be determined at permanency hearing.**—

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

\* \* \*

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child[.]

42 Pa.C.S.A. § 6351(f)(1)-(6), (9).

"These statutory mandates clearly place the trial court's focus on the best interests of the child." *In re S.B.*, 943 A.2d at 978 (citation omitted). "Safety, permanency, and well-being of the child must take precedence over *all* other considerations." *Id.* (citation omitted) (emphasis in original). Moreover, the burden is on the child welfare agency "to prove the change in goal would be in the child's best interest." *In re D.P.,* 972 A.2d 1221, 1227 (Pa. Super. 2009), *appeal denied,* 973 A.2d 1007 (Pa.2009).

In support of her final issue, Mother mostly incorporates her previous reasons against termination to dispute the goal changes, but she does not explain how the result would be different under a goal change analysis. *See* Mother's Brief at 26. As such, we need not address those arguments here since we have done so above.

Mother's primary argument against goal change is that the children were improperly placed with a general foster parent, even though there were viable kinship placement options. For the purpose of a goal change analysis, this consideration is only relevant insofar as the court must consider the appropriateness of the placement.[5] Mother concedes that her relatives were explored as options, and no one disputes that the children have been placed

_____

[5] Mother does not claim that DHS failed to meet the requirements of the Kinship Care Program under 62 P.S. § 1303. Moreover, the termination hearing is not a proper stage to inquire into the adoption alternative for the children. *See In re Adoption of G.R.L.*, 26 A.3d 1124, 1130 (Pa. Super. 2011).

together with the same foster parent for the prior 15 months. To be clear, Mother does not argue that the foster care placement is inappropriate or unsafe, so much as she argues that a kinship placement would be better for the children. But Mother's argument for a better adoption alternative does not negate changing the goals from reunification to adoption. We discern no abuse of discretion regarding the goal changes.

Orders affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/19