J-A15028-20
J-A15046-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3404 EDA 2019 |

Appeal from the Order Entered November 6, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000116-2017

\*\*\*\*\*

| | | |
|---|---|---|
| IN THE INTEREST OF: S.A-L.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3460 EDA 2019 |

Appeal from the Order Entered November 6, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000785-2019

BEFORE:   LAZARUS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    Filed: August 13, 2020

---

[*] Retired Senior Judge assigned to the Superior Court.

A.W. (Mother) appeals from the orders, entered in the Court of Common Pleas of Philadelphia, terminating her parental rights to her minor child, S.H.[1] (born 12/16), pursuant to 23 Pa.C.S.A. §§ 2511 (a)(1), (2), (5), (8), and (b), and changing S.H.'s permanency goal from reunification to adoption pursuant to 42 Pa.C.S.A. § 6351(f.1).[2]  Upon careful review, we affirm.

DHS became involved with Mother's family on January 17, 2017, after receiving reports that Mother tested positive for PCP and marijuana at S.H.'s birth.  When S.H. was four weeks old, he sustained an unexplained fractured skull.  N.T. Termination Hearing, 11/6/19, at 8.  As a result, on February 3, 2017, S.H. was removed from Mother's care and placed into protective custody by the Philadelphia Department of Human Services (DHS).  Trial Court Order, 2/19/17.

After S.H. was placed in DHS' custody, Mother was given the following case plan objectives:  (1) complete parenting classes; (2) complete family school; (3) attend supervised visits at DHS; and (4) submit to a dual-diagnosis drug and alcohol and mental health assessment.  *Id.* at 9.  At the first permanency hearing, held in May of 2017, the goal was reunification.  Trial Court Order, 5/3/2017. Mother complied with her plan objectives and

---

[1]  A/K/A S.A.-L.H.

[2]  The appeal docketed at 3460 EDA 2019 was transferred to this panel as a related appeal on July 8, 2020.  *See* Order Transferring Appeal, 7/8/20.  We consolidated the appeals at 3404 EDA 2019 and 3460 EDA 2019 *sua sponte* for ease of disposition.  *See* Pa.R.A.P. 513.

appeared to have obtained stable housing with her biological mother; thus, Mother and S.H. were reunified in February of 2018. N.T. Termination Hearing, 11/6/19, at 10-11.

Following reunification, DHS and CUA were unable to locate Mother and S.H. for almost three months. *Id.* On July 13, 2017, Mother and S.H. were found at a relative's home. *Id.* at 12. A 90-day safety plan was created with that caregiver, and S.H. was enrolled in daycare; however, two days later, CUA found that Mother and S.H. had absconded the caregiver's home. *Id.* Thus, on July 25, 2018, Child was placed back into DHS' custody.

While Mother had custody of S.H., S.H. was not kept up to date on his medical and dental appointments. *Id.* at 24. Additionally, Mother did not enroll S.H. in daycare. *Id.* at 12.

Following S.H.'s return to DHS care, Mother was compliant with some of her objectives, but failed to obtain stable housing and employment. *Id.* at 13, 25. Between February 2018 and November 2019, Mother provided fourteen different addresses to CUA, almost all of which were invalid. *Id.* at 13-14. Mother acquired full-time employment at Speedway in Norristown in August of 2018, but quit three months later, claiming the commute was too far. *Id.* at 26. At the time of the termination hearing, Mother worked approximately eight hours a week, employed as a home health aide for Credence Home Healthcare. *Id.* at 25.

With regard to her court-ordered scheduled and random drug screenings, Mother was minimally compliant. *Id.* at 25. Between September 6, 2018 and May 29, 2019, Mother failed to complete any random drug screenings. *Id.* at 15. Out of the twenty-one random drug tests Mother was required to complete, she completed three. *Id.* Mother completed four additional drug tests on days she had selected. *Id.* On April 11, 2019, Mother completed a scheduled drug test following a permanency hearing. *Id.* at 16-17. The sample she provided had particles floating in it, which suggested tampering. N.T. Permanency Hearing, 6/13/19, at 10-11. When asked to provide another sample that day, Mother refused. *Id.* Instead, Mother came back the following day to provide the sample. *Id.* At the termination hearing, Mother stated that she did not retake the drug test the same day because she was late for her shift as a home health aide at Aveanna. N.T. Termination Hearing, 11/6/19, at 51. Mother, however, offered no proof of her employment at Aveanna. *Id.* at 25-26. CUA case manager Jelea McNeil testified that Mother's non-compliance with drug screening, inconsistent and questionable employment, and unstable housing were Mother's greatest obstacles to reunification. *Id.* at 20-21.

On October 21, 2019, DHS filed a petition to involuntarily terminate Mother's parental rights to S.H. pursuant to 23 Pa.C.S.A. §§ 2115 (a)(1), (2), (5), and (8), and (b), and to change S.H.'s permanency goal to adoption pursuant to 42 Pa.C.S.A. § 6351(f.1). On November 6, 2019, following a

hearing, the trial court terminated Mother's parental rights to Child and changed Child's permanency goal to adoption. Mother filed this timely appeal.[3] She raises the following issues for review:

> (1) Did the trial court err as a matter of law or abuse its discretion when it found that the Philadelphia Department of Human Services (DHS) met its burden to prove that the requirements of 23 Pa.C.S.A. § 2511(a) were met?

> (2) Did the trial court err as a matter of law or abuse its discretion when it found that DHS met its burden to prove that the requirements of 23 Pa.C.S.A. § 2511(b) were met?

> (3) Did the trial court err as a matter of law or abuse its discretion when it found that it was in [S.H.'s] best interest to change the permanency goal from reunification to adoption?

Appellant's Brief, at 2.

In an appeal from an order terminating parental rights, the scope of review is comprehensive. *In re L.M*., 923 A.2d 505, 511 (Pa. Super. 2007). This Court considers "all the evidence presented as well as the trial court's factual findings and legal conclusions." *Id.* We will reverse "only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings." *Id.* It is well settled that "[t]he trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004)

---

[3] The court also terminated the parental rights of Child's father. Father did not appeal the termination of his parental rights. *See* Trial Court Opinion, 1/13/20, at 1.

(citation omitted). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.***, 835 A.2d 387,394 (Pa. Super. 2003) (citation omitted).

The termination of parental rights is governed by 23 Pa.C.S.A. § 2511 of the Adoption Act,[4] which provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of

---

[4] 23 Pa.C.S.A. §§ 2101-2938.

time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b).

Parental rights may be involuntarily terminated "where any one subsection of [s]ection 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." **In re Z.P.**, 994 A.2d 1108, 1115 (Pa. Super. 2010). In this two-step analysis, the focus is initially on the conduct of the parent. **See In re L.M.**, **supra** at 511. "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." **Id.** This standard requires evidence "so clear, direct, weighty, and convincing as to

enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004).

If the court decides that the parent's conduct warrants termination of parental rights, it then engages in the second part of the analysis pursuant to 2511(b). *Id.* "One major aspect of [this] analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *Id.* Additionally, the court must "equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent[.]" *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).

When changing a child's permanency goal, the court must determine the goal in accordance with the child's best interests, not those of the parents. *See In re G.P.-R.*, 851 A.2d 967, 973 (Pa. Super. 2004). The "[s]afety, permanency and well-being of the child must take precedence over all other considerations." 42 Pa.C.S.A. § 6351. Section 6351(f) provides, in pertinent part, that at each permanency hearing, a court shall determine the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

42 Pa.C.S.A. § 6351(f). Based upon the court's determinations under section 6351(f), and all relevant evidence presented at the hearing, the court shall choose a permanency goal under section 6351(f.1), which provides the following relevant options:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1).

"When circumstances are such that the best interests of the child dictate a goal change to adoption, then the trial court acts well within its authority to order the goal change — even if the parent has made substantial progress toward completion of his or her permanency plan[.]" *In re A.K.*, 936 A.2d 528, 534 (Pa. Super. 2007); *see also In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006) (finding goal change to adoption in best interest of child despite

mother's substantial progress toward permanency plan).  Additionally, at the review hearing for a child who has been removed from the parental home, the court must consider the factors mandated under section 6351.  **See In re D.P.**, 972 A.2d 1221, 1230 (Pa. Super. 2009) (citation omitted).

If a parent has "cooperated with the agency, achieved the goals of his or her permanency plans, and alleviated the circumstances that necessitated the child's original placement[,]" the agency should continue efforts to reunite the child with his or her parent.  **Id.** (citation omitted).  But, if a child welfare agency makes reasonable efforts to return a foster child to his or her biological parent, and those efforts have failed, the agency must redirect its efforts towards placing the child into an adoptive home.  **See In re N.C.**, **supra** at 823.

Before we address the merits of Mother's claims, we must address the shortcomings of her brief submitted for 3404 EDA 2019, the appeal of S.H.'s permanency goal change to adoption.[5]  Appellate briefs must conform in all respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure; otherwise, they may be quashed or dismissed.  **See** Pa.R.A.P.  2101.  Regarding the summary of argument section of an appellate brief, Rule 2118 requires a "concise, but accurate, summary of the arguments presented in support of the issues in the statement of questions involved.

---

[5] Mother submitted separate, materially different, briefs for each appeal.

Pa.R.A.P. 2118. Here, Mother's summary of argument describes circumstances wholly unrelated to those at hand. Additionally, in the first line of the summary, Mother asks this Court to reverse the trial court's decision, but in the last line, she asks this Court to affirm. **See** Appellant's Brief, at 8-9.[6]

Additionally, Mother's argument section is woefully underdeveloped. Regarding S.H.'s permanency goal change to adoption, Mother's argument consists of a cut-and-paste of the rationale included in the trial court's opinion, followed by one paragraph of unsubstantiated conclusions about Mother's progress toward her goals. **See** Appellant's Brief, at 26-27. She includes no references to the record, as required by Pa.R.A.P. 2119(c). Mother's section 2511(a)(2) analysis, in particular, appears to include pages of cut-and-pasted material from an entirely different appeal. **See** Appellant's Brief, at 13-14. **See also** Pa.R.A.P. 2101 (if defects in brief of appellant are substantial, the appeal may be quashed).

In this instance, the defects are indeed substantial; however, in the interests of justice and expediency, we will address Mother's permanency goal change. We have carefully reviewed the record, and we are fully satisfied that the trial court opinion properly disposes of the permanency goal change issue Mother has raised on appeal. **See** Trial Court Opinion, **supra** at 5-6 (Mother refused to participate in court-ordered drug testing to ensure her sobriety;

---

[6] This appears to be a cut-and-paste of filings from a different case.

Mother refused to retake a drug screen after her initial sample appeared to be tampered with; Mother was unable to secure safe and permanent housing for S.H., providing 14 different addresses in 14 months; Mother failed to comply with many of her objectives, specifically drug screens, employment and housing; Mother's failure to comply with her plan objectives undermined S.H.'s safety; and S.H.'s permanency interests were best served by changing the goal to adoption).

After careful review, we are also satisfied that the trial court opinion properly disposes of Mother's appeal from the order terminating her parental rights. Here, the evidence of record supports the trial court's finding that termination was proper pursuant to sections 2511(a)(1), (2), (5) and (8). **See** Trial Ct. Op., **supra** at 7-13 (finding: (1) pursuant to section 2511(a)(1), Mother's refusal to comply with her single case plan objectives, failure to acquire stable housing, failure to acquire more than eight hours a week of work, failure to properly address her PCP and marijuana usage, and failure to complete random drug screenings evidenced settled purpose of relinquishing parental claim to S.H. and failure to perform parental duties; (2) pursuant to 2511(a)(2), "incapacity," "refusal," and "neglect" exists given Mother's failure to comply with random drug screenings despite fact she knew compliance would reinstate community visits and potentially eliminate need for future random drug screenings, Mother's failure to keep S.H. up to date medically in her custody, and Mother's failure to comply with her objectives, which left S.H.

without essential parental care; (3) pursuant to sections 2511(a)(5) and (8), at the time of the hearing S.H. had been out of Mother's care for 28 of previous 32 months, Mother's unwillingness to comply with random drug screening, find stable housing, or find adequate employment shows circumstances leading to S.H.'s placement are unresolved and Mother is unwilling to resolve them, adoption is in S.H.'s best interest as he has adjusted well to pre-adoptive home and built strong bond with foster parent).

Further, the trial court opinion accurately explains why Mother's parental rights were correctly terminated pursuant to section 2511(b). **See** Trial Ct. Op., **supra**, at 14-15 (finding: S.H. would not suffer irreparable emotional harm if Mother's parental rights were terminated; S.H. does not seek comfort or care from Mother; S.H. seeks comfort and care from others, including his foster parents; testimony shows S.H.'s primary attachment is with his foster parents; S.H. is no closer to reunification than when the case was initiated in 2017; Mother had not been able to meet S.H.'s needs for 32 months prior to the termination hearing).

We conclude that the trial court's decisions to terminate Mother's parental rights under sections 2511(a) and (b) are supported by clear and convincing evidence. **In re L.M.**, **supra**. We also conclude that the trial court correctly determined that it was in S.H.'s best interests to change the permanency goal from reunification to adoption pursuant to 42 Pa.C.S.A. §

6351(f.1).  ***In re: A.K***., ***supra***.  We find no abuse of discretion.  ***In re L.M.***, ***supra***.

The trial court opinion, authored by the Honorable Daine Grey, Jr., properly disposes of the issues Mother has raised on appeal.  Therefore, we affirm the trial court's orders based on Judge Grey's opinion, and we direct the parties to attach a copy of that opinion in the event of further proceedings.

Orders affirmed.
Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/13/20</u>